IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

AMY RANEE MCCAUSLIN,   : Civ. No. 1:24-CV-1139
            :
    Plaintiff     :
            :
    v.       :
            : (Chief Magistrate Judge Bloom)
LELAND DUDEK, Acting   :
Commissioner of Social Security,[1] :
            :
    Defendant   :

## MEMORANDUM OPINION

## I. Introduction

Amy McCauslin filed a Title XVI application for supplemental security income on June 13, 2022. (Tr. 34). Following a hearing before an Administrative Law Judge ("ALJ"), the ALJ found that McCauslin was not disabled from the date her application was filed, June 13, 2022, through March 19, 2024, the date of the ALJ's decision. (Tr. 34).

---

[1] Leland Dudek became the acting Commissioner of Social Security on February 19, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Leland Dudek is substituted as the defendant in this suit.

McCauslin now appeals this decision, arguing that the ALJ's decision is not supported by substantial evidence. After a review of the record, we conclude that the ALJ's decision is not supported by substantial evidence. Therefore, we will remand this matter for further consideration by the Commissioner.

## II.   Statement of Facts and of the Case

On June 13, 2022, McCauslin applied for supplemental security insurance benefits, citing an array of physical and mental impairments, including, *inter alia*, degenerative disc disease of the lumbar spine, fibromyalgia, obesity, chronic pain syndrome, and post-traumatic stress disorder ("PTSD"). (Tr. 36). McCauslin was 44 years old at the time of the alleged onset of disability, had a high school education, and had no relevant work experience. (Tr. 48).

With respect to McCauslin's physical impairments,[2] the record revealed the following: The earliest relevant records are from July 27,

---

[2] We note that, because McCauslin's appeal focuses on the ALJ's treatment of evidence related to her physical impairments, we will forego discussion and analysis of the mental health records and the corresponding portion of the ALJ's decision.

2021, when McCauslin consulted Dr. Konrad Dziamski, a rheumatologist, and complained of fatigue and body pain. (Tr. 303). Dr. Dziamski identified the source of McCauslin's pain as fibromyalgia ("FM"), which McCauslin was diagnosed with in 2011. (Tr. 307). Dr. Dziamski noted McCauslin had disproportionate tenderness to palpitations in multiple FM trigger points. (Tr. 312). He referred her to the Lancaster Fibromyalgia Clinic. (Tr. 306).

Over the next 12 months, McCauslin consulted with her primary care physician ("PCP"), Dr. Patrick Quinlan, several times for acute issues unrelated to her FM. (Tr. 355-76). On October 6, 2022, McCauslin presented to the Gettysburg Hospital pain clinic with complaints of diffuse body discomfort and pain in her spine. (Tr. 481). McCauslin and Dr. Edward Mackle discussed available pain management tactics. (Tr. 484). Later that month, McCauslin attended two physical therapy sessions, but apparently never pursued the other pain management tactics recommended by Dr. Mackle. (Tr. 491-505).

Also in October of 2022, as part of her disability claim, McCauslin underwent a consultative examination with Dr. Ahmed Kneifati. (Tr.

508). McCauslin complained of hypertension, asthma, fibromyalgia, and headaches. (*Id.*). Dr. Kneifati reported mostly normal findings, but also reported that McCauslin had 12 positive FM "tender points." (Tr. 509-10).

Over the next 11 months, McCauslin continued to present to her PCP with various acute issues unrelated to FM. (Tr. 540-59, 729, 1122, 1129, 1136). In September of 2023, she complained to Dr. Quinlan about worsening FM pain, saying her pain ranged from five to seven out of ten. (Tr. 777). Dr. Quinlan noted McCauslin had "typical fibromyalgia trigger points." (*Id.*). At a November 6, 2023, follow-up, Dr. Quinlan prescribed Flexeril for FM pain. (Tr. 761).

It is against this factual backdrop that the ALJ conducted a hearing in McCauslin's case on January 3, 2024. (Tr. 55). McCauslin and a vocational expert ("VE") both testified at this hearing. (Tr. 62-83). McCauslin testified about how her pain affects her daily living and prevents her from holding a job, and about her medical history. (Tr. 62-79). The VE answered hypothetical questions from the ALJ and

McCauslin's attorney about the potential employability of a person with McCauslin's background and various specific limitations. (Tr. 79-83).

Following this hearing, on March 19, 2024, the ALJ issued a decision denying McCauslin's application for benefits. (Tr. 34-49). In that decision, the ALJ first concluded that McCauslin had not engaged in substantial gainful activity since June 13, 2022, the application date. (Tr. 36). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found McCauslin suffered from the following severe impairments: chronic obstructive pulmonary disease, degenerative disc disease of the lumbar spine, fibromyalgia, obesity, chronic pain syndrome, depressive disorder, anxiety disorder, panic disorder without agoraphobia, and PTSD. (*Id.*). At Step 3 the ALJ determined that McCauslin did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 37).

Between Steps 3 and 4 the ALJ concluded that McCauslin retained the residual functional capacity to:

> [P]erform light work as defined in 20 CFR 416.967(b) except the claimant can frequently climb ramps or stairs, but only

occasionally climb ladders, ropes or scaffolds. She can frequently balance, stoop, kneel, crouch or crawl. The claimant can understand, remember or carry out simple, routine, repetitive tasks. These are tasks that can be easily understood, easily performed, basic, not complicated, clear and straightforward. These tasks require little to no demonstration, and they can be learned within thirty days or less from the beginning of the job. She can make judgments on simple, work-related decisions. The claimant can occasionally interact with the public, coworkers and supervisors in a routine work setting.

(Tr. 42).

In reaching this RFC determination, the ALJ considered McCauslin's reported, subjective symptoms, and found that they were not entirely consistent with the objective medical evidence. (Tr. 43). The ALJ also found McCauslin's "medical records contain substantial evidence that is not consistent with the claimant's allegations pertaining to the claimant's severe physical impairments." (*Id*). The ALJ reviewed the medical record evidence he found supported these conclusions, including treatment records in which McCauslin did not complain of FM symptoms or pain. (Tr. 43-44). Specifically, the ALJ appeared to rely on objective findings of "no acute distress" and "normal appearance" in discounting McCauslin's subjective complaints of pain. (*See* Tr. 43-44).

6

The ALJ next considered the medical opinions on record. He was only partially persuaded by the opinion of Dr. Ahmed Kneifati. (Tr. 45). The ALJ found Dr. Kneifati's opinion that McCauslin was capable of a range of light work was consistent with and supported by the medical record. (Tr. 45-46). But the ALJ found some of Dr. Kneifati's other conclusions inconsistent with his own clinical examinations and with certain normal findings in the record. (*Id.*). The ALJ found the opinions of the state agency medical consultants, Drs. Glenda Ann Cardillo and Hong Sik Park, to be generally persuasive. (Tr. 46). The ALJ found those opinions to be generally consistent with and supported by the evidence but found it necessary to provide a more restrictive RFC with regards to lifting and carrying than those opinions deemed appropriate. (*Id.*). The ALJ found the third-party statement from the claimant's daughter, Regina McCauslin, to be unpersuasive as it did not align with some of the objective medical evidence. (Tr. 47). The ALJ apparently did not consider McCauslin's activities of daily living in assessing her physical impairments and subjective complaints.

7

The ALJ then found at Step 4 that McCauslin had no relevant past work, but, at Step 5, found that she could perform other jobs that existed in significant numbers in the national economy, such as sorter, hand bander, and tag inserter. (Tr. 48). Having reached these conclusions, the ALJ determined that McCauslin had not met the demanding showing necessary to sustain a claim for benefits and denied her claim. (Tr. 49).

This appeal followed. (Doc. 1). On appeal, McCauslin challenges the adequacy of the ALJ's decision, arguing it is not supported by substantial evidence. (Doc. 11 at 8-24). As discussed in greater detail below, having considered the arguments of counsel and carefully reviewed the record, we conclude that the ALJ's decision should be remanded for further consideration by the Commissioner in accordance with this decision.

III. <u>Discussion</u>

A. <u>Substantial Evidence Review – the Role of this Court</u>

This Court's review of the Commissioner's decision to deny benefits is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. See 42 U.S.C.

8

§405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence means less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

A single piece of evidence is not substantial evidence if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)) (internal quotations omitted). However, where there has been an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). The court must "scrutinize the record

as a whole" to determine if the decision is supported by substantial evidence. *Leslie v. Barnhart*, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has explained the limited scope of our review, noting that "[substantial evidence] means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Under this standard, we must look to the existing administrative record to determine if there is "'sufficient evidence' to support the agency's factual determinations." *Id.* Thus, the question before us is not whether the claimant is disabled, but rather whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was based upon a correct application of the law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); *see also*

*Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

When conducting this review, we must remain mindful that "we must not substitute our own judgment for that of the fact finder." *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we cannot re-weigh the evidence. Instead, we must determine whether there is substantial evidence to support the ALJ's findings. In doing so, we must also determine whether the ALJ's decision meets the burden of articulation necessary to enable judicial review; that is, the ALJ must articulate the reasons for his decision. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000). This does not require the ALJ to use "magic" words, but rather the ALJ must discuss the evidence and explain the reasoning behind his decision with more than just conclusory statements. *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations omitted). Ultimately, the ALJ's decision must be accompanied by "a clear and

satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

**B.** <u>Initial Burdens of Proof, Persuasion, and Articulation for the ALJ.</u>

To receive disability benefits under the Social Security Act, a claimant must show that he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); *see also* 20 C.F.R. §§404.1505(a), 416.905(a). This requires a claimant to show a severe physical or mental impairment that precludes her from engaging in previous work or "any other substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she is under retirement age, contributed to the insurance program, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination, the ALJ follows a five-step evaluation. 20 C.F.R. §§404.1520(a), 416.920(a). The ALJ must sequentially determine whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals a listed impairment; (4) is able to do his or her past relevant work; and (5) is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also determine the claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett*, 220 F.3d at 121 (citations omitted); *see also* 20 C.F.R. § 404.1545(a)(1). In making this assessment, the ALJ must consider all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2). Our review of the ALJ's determination of the plaintiff's RFC is deferential, and that determination will not be set aside if it is supported by

13

substantial evidence. *Burns v. Barnhart,* 312 F.3d 113, 129 (3d Cir. 2002).

The claimant bears the burden at Steps 1 through 4 to show a medically determinable impairment that prevents him or her from engaging in any past relevant work. *Mason*, 994 F.2d at 1064. If met, the burden then shifts to the Commissioner to show at Step 5 that there are jobs in significant numbers in the national economy that the claimant can perform consistent with the claimant's RFC, age, education, and work experience. 20 C.F.R. §§404.1512(f), 416.912(f); *Mason*, 994 F.2d at 1064.

With respect to the RFC determination, courts have followed different paths when considering the impact of medical opinion evidence on this determination. While some courts emphasize the necessity of medical opinion evidence to craft a claimant's RFC, *see Biller v. Acting Comm'r of Soc. Sec.,* 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013), other courts have taken the approach that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." *Titterington v. Barnhart*, 174 F. App'x 6,

14

11 (3d Cir. 2006). Additionally, in cases that involve no credible medical opinion evidence, courts have held that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." *Cummings v. Colvin*, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

Given these differing approaches, we must evaluate the factual context underlying an ALJ's decision. Cases that emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where well-supported medical sources have found limitations to support a disability claim, but an ALJ has rejected the medical opinion based upon an assessment of other evidence. *Biller*, 962 F. Supp. 2d at 778–79. These cases simply restate the notion that medical opinions are entitled to careful consideration when making a disability determination. On the other hand, when no medical opinion supports a disability finding or when an ALJ relies upon other evidence to fashion an RFC, courts have routinely sustained the ALJ's exercise of independent judgment based upon all the facts and evidence. *See Titterington*, 174 F. App'x 6; *Cummings*, 129 F. Supp. 3d at 214–15.

Ultimately, it is our task to determine, considering the entire record, whether the RFC determination is supported by substantial evidence. *Burns,* 312 F.3d 113.

### C. <u>This Case Will Be Remanded.</u>

As we have noted, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests," *Cotter*, 642 F.2d at 704, and the ALJ must "indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999). After consideration, we conclude that the ALJ's RFC determination is not supported by an adequate explanation.

The Social Security Commissioner has published specific guidelines for an ALJ's treatment of FM. *See* SSR 12-2p, 2012 WL 3104869 (2012). Because FM presents inconsistently, certain changes in an ALJ's procedure are necessary when considering FM. *Id.* Where an ALJ identifies FM as a medically determinable impairment, the ALJ must follow a two-step process: First, consider whether objective medical evidence substantiates the claimant's statements about the intensity,

16

persistence and limiting effects of their symptoms. *Id.* at *5. If the ALJ finds that the objective medical evidence does not substantiate the claimant's allegations, the ALJ moves to the second step, and considers the evidence as a whole, including any of the relevant factors laid out in 20 C.F.R. § 404.1529(c)(3). *See* SSR 12-2p at *6.

Courts have interpreted SSR 12-2p to mean an ALJ "may not discredit a claimant's subjective complaints regarding fibromyalgia symptoms based on a lack of objective evidence substantiating them." *Arakas v. Comm'r of Soc. Sec.*, 983 F.3d 83, 97 (4th Cir. 2020) (noting that the Second, Sixth, Seventh, Eighth, and Ninth Circuit Courts of Appeal have made similar holdings). Courts enforcing that admonition have found error where an ALJ references normal physical examinations to discount a claimant's subjective complaints about FM symptoms. *See e.g., Brunson v. Kijakazi*, Civ. No. 22-cv-3993, 2023 WL 5916461 at *14-15 (E.D. Pa. Sep. 11, 2023). ("[I]nsisting on confirmatory objective results—such as positive physical examination findings—within those records is improper [,]" and necessitates remand unless the error is shown to be harmless).

In this case, the ALJ's decision laid out McCauslin's alleged symptoms, explicitly mentioning FM in three of four paragraphs. (Tr. 42-43). The ALJ then concluded those symptoms were "not entirely consistent with the medical evidence and other evidence in the record [.]" (Tr. 43). The ALJ explained that:

> [T]he claimant's medical records indicate during February 2023, the claimant was noted to not be ill-appearing and to not be in acute distress (Exhibit 12F). During April 2023, the claimant denied experiencing myalgias and back pain and the claimant was noted to have a normal appearance (Exhibit 18F). During June 2023, the claimant was noted to not be toxic appearing and to not be in acute distress (Exhibit 15F). During September 2023, the claimant was noted to have a normal appearance and the claimant was assessed with clinical examination findings of a supple neck and no focal neurological deficits (Exhibit 16F).
>
> Furthermore, the claimant's medical records indicate during October 2023, the claimant was noted to not be toxic appearing and to not be in acute distress and the claimant was assessed with a clinical examination finding of no focal neurological deficits (Exhibit 15F). During November 2023, the claimant was noted to have a normal appearance and the claimant was assessed with clinical examination findings of normal range of motion of the cervical back, no sensory deficit, and no focal neurological deficits (Exhibit 16F).

(Tr. 44).

Each sentence in these paragraphs commits the precise error that *Arakas* and *Brunson* warn against: "insisting on confirmatory objective results [.]" *Brunson* at *14. We agree with the *Arakas* court and the many others that have held that it is error for an ALJ to rely on an absence of symptoms to discount a claimant's reported FM symptoms. Such reliance creates doubt that the ALJ considered that "symptoms of FM can wax and wane so that a person may have 'bad days and good days.'" SSR 12-2p at *6.

However, the second step of the process outlined in SSR 12-2p permits an ALJ to discount the impact of FM based on the other factors listed at 20 C.F.R. § 404.1529(c)(3). If that step shows that permissibly considered evidence would have forced the same conclusion, the error is harmless. *See e.g., Trauterman v. Commissioner of Social Sec.*, 296 F. App'x 218, 221 (3d Cir. 2008) (denial did not require remand because the decision was clear that the absence of confirmatory objective record evidence was weighed only in the context of impairments besides FM, and because the ALJ relied on activities of daily living and specific medical evidence contrary to the claimant's reported symptoms to

discount FM symptoms). *Trauterman* demonstrates that an ALJ may consider the full longitudinal medical record and may rely on evidence that *affirmatively*—rather than by omission—suggests the claimant's symptoms do not evince disability. *Id.* at 220-21.

Social Security appeals are subject to harmless error analysis. *See Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016). Under the harmless error analysis, a remand is warranted only if the error "prejudices a party's 'substantial rights'"; that is, if the error "likely affects the outcome of the proceeding, . . ." *Hyer v. Colvin*, 72 F. Supp. 3d 479, 494 (D. Del. 2014).

Here, the ALJ pointed to two pieces of evidence that suggested McCauslin's symptoms were not as serious as she alleged: a December 2022 examination where McCauslin had normal examination findings, and the fact that the record did not support McCauslin's claim that her walker was prescribed. (Tr. 43-44). But there is nothing in the decision indicating the ALJ's discussion of a lack of confirmatory results was in reference to non-FM impairments. Further, nothing about the decision suggests that the ALJ placed more weight on those two pieces of

affirmative evidence than he did on the two paragraphs worth of omission evidence. Rather, it appears that the ALJ relied principally on the lack of abnormal objective clinical findings, and therefore we find the error was not harmless.

Accordingly, a remand is required for further consideration of these issues. While we reach this conclusion, we note that nothing in this Memorandum Opinion should be deemed as expressing a judgment on the ultimate outcome of this matter. Rather, that task is left to the ALJ on remand.

## IV.    Conclusion

For the foregoing reasons, the decision of the Commissioner will be remanded for further consideration.

An appropriate order follows.

_s/ Daryl F. Bloom_
Daryl F. Bloom
Chief United States Magistrate Judge

Dated: May 6, 2025